**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DANA FEDOR, and all others similarly
situated,

     Plaintiff - Appellant,

v.

UNITED HEALTHCARE, INC.; UNITED
HEALTHCARE SERVICES, INC.,

     Defendants - Appellees.

No. 19-2066

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:17-CV-00013-MV-KBM)**
_____

Karla Gilbride, Public Justice, P.C. (Stephanie K. Glaberson, Public Justice, P.C.,
Washington, D.C., Jack Siegel, Siegel Law Group PLLC, Dallas, Texas, David Seligman,
Towards Justice, Denver, Colorado, and J. Derek Braziel, Lee & Braziel, L.L.P., Dallas,
Texas, with her on the briefs), Washington, D.C. for the Plaintiff-Appellant.

Robert F. Friedman, Littler Mendelson, P.C. (Mark Ogden and Cory G. Walker, Littler
Mendelson, P.C., Phoenix, Arizona, on the brief), Dallas, Texas, for Defendants-
Appellees.

_____

Before **BACHARACH**, **McHUGH**, and **EID**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

Plaintiff-Appellant Dana Fedor appeals the district court's order compelling her to arbitrate the employment-related claims she brought against her former employer, UnitedHealthcare, Inc. (UHC), and United Healthcare Services, Inc. Fedor argues that the district court impermissibly compelled arbitration before first finding that she and UHC had indeed formed the arbitration agreement underlying the district court's decision. We agree and conclude that the issue of whether an arbitration agreement is formed in the first instance must be determined by the court, even where there has been a failure to specifically challenge provisions within the agreement delegating certain decisions to an arbitrator. Exercising jurisdiction under 28 U.S.C. § 1291, we vacate and remand to the district court.

I.

Fedor worked as a care coordinator for UHC from November 2013 to November 2016. In 2017, Fedor filed a collective suit in the District Court for the District of New Mexico alleging that UHC violated the Fair Labor Standards Act (FLSA) and New Mexico's wage law (N.M. Stat. Ann. § 50-4-22(D)). Fedor filed her initial complaint, eight other former employees joined her action.

Defendant-Appellee UHC moved for the district court to dismiss Fedor's suit and compel her to arbitrate her case. UHC claimed that Fedor and the other class members were each bound by a UHC policy requiring all employees to settle employment-related claims through arbitration, not litigation.

UHC demonstrated to the district court that each of the class members had received and signed an arbitration policy when they commenced employment with

2

UHC.  Because the plaintiffs started work in different years (one started in 2009, one in 2011, one in 2012, three in 2013, one in 2014, and two in 2015), and because UHC periodically updated its arbitration policy (it updated the policy in 2006, 2012, 2015, and 2016), not all of the plaintiffs signed the same arbitration policy.

There are therefore four versions of the arbitration policy that are relevant to this case—the 2006, 2012, 2015, and 2016 versions.  The 2006, 2012, and 2015 versions are relevant because they were the versions seen and signed by at least one of the plaintiffs.  The 2016 version is relevant because it is the version UHC claimed was active at the time it moved for the district court to dismiss Fedor's suit and compel arbitration.

The 2016 policy differed from the three preceding polices in two important ways.  First, while the preceding policies included an "amendment clause," the 2016 policy notably did not.  This "amendment clause" in the earlier versions asserted that UHC "reserve[d] the right to amend, modify, or terminate the Policy effective on January 1 of any year after providing at least 30 days' notice of its intent and the substance of any amendment, modification or termination of the Policy."  Aplt. App. at 63 (Ex. B, 2006 policy); *id*. at 125 (Ex. H, 2012 policy); *id*. at 146 (Ex. J, 2015 policy).  The 2006, 2012, and 2015 versions also stated that "[n]otice may be effected by the posting of the notice on the UnitedHealth Group intranet website" and that "[a]ll arbitrations shall be conducted in accordance with the Policy in effect on the date . . . the Demand for Arbitration" was received.  *Id*. at 63, 125, 146–47.

The second aspect in which the 2016 policy differed from the three preceding versions was that it contained a "delegation clause" establishing that an arbitrator—instead of a court—would resolve disputes regarding the policy's "interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Policy or any portion of the Policy is void or voidable." *Id*. at 232. None of the three preceding versions contained such a delegation clause.

In response to UHC's motion to compel arbitration, Fedor argued that the 2009, 2012, and 2015 arbitration policies were void as illusory. She contended that the amendment clause at the end of each policy gave UHC the unilateral ability to amend or terminate the arbitration policy any time before an employee filed an arbitration claim, and therefore UHC's promise to arbitrate was illusory. She also argued that the 2016 arbitration policy was "irrelevant" because none of the plaintiffs saw or signed it. *Id*. at 243–45.

Though the district court agreed with Fedor and found the 2009, 2012, and 2015 policies were illusory, it nonetheless compelled arbitration based on the 2016 policy. In its decision, the court did not examine whether Fedor or the other plaintiffs ever agreed to the 2016 policy. Instead, it simply noted that Fedor challenged "only the validity of the contract as a whole," and did not specifically challenge the delegation clause within the 2016 policy. *Id*. at 273. The court cited the Supreme Court's opinion in *Rent-A-Center, West, Inc. v. Jackson* to assert that "unless the party opposing arbitration 'challenge[s] the delegation provision specifically,' as opposed to 'challeng[ing] only the validity of the contract as a

4

whole,' this [c]ourt 'must enforce it . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator.'" *Id*. (first and second alterations in original) (quoting 561 U.S. 63, 72 (2010)).

Fedor now appeals the district court's judgment compelling her to arbitrate her employment-related claims against UHC. She argues that—even for arbitration policies containing delegation clauses—courts must first determine whether an agreement to arbitrate was formed before sending the case to an arbitrator. In addition to opposing Fedor's challenge to the 2016 arbitration policy, UHC argues that we should affirm the lower court's arbitration order on the basis that the 2006, 2012, and 2015 policies were valid, or on the basis that the plaintiffs implicitly agreed to arbitrate their employment-related claims by commencing employment with UHC after reading the company's arbitration policy in their offer letters.

## II.

Under de novo review,[1] we find that the district court erred by compelling arbitration based on Fedor's failure to specifically challenge the arbitration clause within the 2016 arbitration agreement which, according to Fedor, was never formed between herself and UHC. It is true that a delegation clause can typically be "severed" from an arbitration agreement and can thus prevent a court from deciding certain arbitrability issues unless a litigant challenged the clause directly. However, a delegation clause cannot be severed from an agreement that does not exist. Courts

---

[1] We review orders granting a motion to compel arbitration de novo. *Williams v. Imhoff*, 203 F.3d 758, 762 (10th Cir. 2000).

5

must therefore first determine whether an arbitration agreement was indeed formed before enforcing a delegation clause therein.

A.

Section 2 of the Federal Arbitration Act established the "rule of severability," which means that an arbitration clause within a contract is "severable" from the remainder of the contract. *Rent-A-Center*, 561 U.S. at 70–71; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447 (2006). "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70. For example, "in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone." *Id.* at 71. Similarly, a "claim[] of fraud in the inducement of [a] contract generally" cannot by itself prevent a federal court from enforcing an arbitration clause embedded therein. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). For federal courts to review such a claim, the claim must be directed at the "arbitration clause itself." *Id.* at 403.

The rule of severability can also apply when an agreement to arbitrate is codified not as a single clause within a contract, but rather in the form of a separate arbitration contract altogether. *See Rent-A-Center*, 561 U.S. at 72. While courts typically resolve "arbitrability" issues such as the validity, scope, or enforcement of an arbitration contract, *Granite Rock Co. v. International Brothers of Teamsters*, 561

6

U.S. 287, 298 (2010), delegation clauses within arbitration contracts can commit the determination of such issues to an arbitrator. *Rent-A-Center*, 561 U.S. at 68–69. These delegation clauses are severable and are thus considered separate from the rest of the arbitration contract. *Id*. at 72. Therefore, if a party challenges the validity of an arbitration contract as a whole but fails to specifically challenge a delegation clause therein, then the delegation clause will typically require a court to compel arbitration and allow an arbitrator to determine whether the arbitration contract was indeed valid. *Id*.

The Supreme Court's decision in *Rent-A-Center* illustrates how the rule of severability applies to delegation clauses within an arbitration contract. In *Rent-A-Center*, the Court reversed the Ninth Circuit's judgment which held that a court could decide whether the arbitration agreement between Jackson and Rent-A-Center was unconscionable—even though the agreement contained a delegation clause giving an arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of [the] [a]greement." *Id*. at 71. Rent-A-Center argued that because Jackson did not challenge this delegation clause specifically but instead challenged the "arbitration agreement *as a whole*," the delegation clause should be enforced. *Id*. at 73 (emphasis added). The Court sided with Rent-A-Center and found that because "Jackson [did not] challenge[] the delegation provision specifically, [the Court] must treat it as valid." *Id*. at 72.

But not all arbitrability issues can be delegated. The issue of whether an arbitration agreement was formed between the parties must always be decided by a

7

court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause. *See id*. at 69 n.1; *see also Granite Rock*, 561 U.S. at 297. The Supreme Court in *Rent-A-Center* stated that, though "parties can agree to arbitrate 'gateway' questions of 'arbitrability,'" *id*. at 68–69, "[t]here is one caveat . . . [c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so," *id*. at 69 n.1 (alterations in original) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). And while the *Rent-A-Center* Court held that a litigant must specifically challenge the delegation clause in order to allow courts to determine the validity of an arbitration contract as a whole, its holding does not apply in situations where a party alleges that no agreement "was ever concluded" between the parties. *Id*. at 70 n.2.

Three days after *Rent-A-Center* was published, the Supreme Court reaffirmed its position that issues concerning the formation of an arbitration contract cannot be delegated to an arbitrator. In *Granite Rock*, the Court reversed the Ninth Circuit's judgment compelling the parties to arbitrate their claims even though the formation of the underlying arbitration agreement was at issue. 561 U.S. at 294–95, 313. And while the arbitration agreement there did not include a delegation clause, the Court's "framework" for deciding the case shows that it would have found the dispute to be un-arbitrable even if a delegation clause was present. *See id*. at 297–99.

Under *Granite Rock*'s "proper framework for deciding when disputes are arbitrable," a court cannot order arbitration of a particular dispute unless it is

8

"satisfied that the parties agreed to arbitrate *that dispute*." *Id*. at 297 (emphasis in original). The Court explained that while issues such as the "scope" and "enforceability" of an arbitration clause can be committed to an arbitrator through a "[delegation] provision," courts must "always" resolve "whether the clause was agreed to" by the parties. *Id*. at 297, 299 ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.") (emphasis in original).

B.

Fedor's challenge to the 2016 arbitration policy must be heard by a court instead of an arbitrator. By claiming that neither she nor the other class members read or accepted the 2016 arbitration agreement, Fedor raised[2] an issue of formation

---

[2] UHC claims that Fedor waived her challenge to the 2016 arbitration policy because she "failed to (1) substantively raise the issue of formation before the District Court, or (2) challenge the delegation clause at all." Aple. Br. at 17. But we disagree.

Fedor's argument below—that neither she nor the other plaintiffs ever "signed, read or even knew about" the 2016 arbitration agreement—was essentially one of *formation*. Aplt. App. at 244. We therefore find that Fedor raised the issue of formation below and thus preserved it for appeal.

Fedor's argument on appeal relating to the delegation clause was similarly preserved below. As this court found in *Tesone v. Empire Marketing Strategies*, if the lower court "passes upon" an issue by applying "the relevant law to the relevant facts," then the issue is not forfeited on appeal. 942 F.3d 979, 992 (10th Cir. 2019). Here, the district court discussed relevant law—*Rent-A-Center*—to explain that a party opposing arbitration must specifically challenge the delegation clause (if it exists) within the relevant policy to enable a court to resolve the dispute. Aplt. App. at 273 (Dismissal Order at 8) (citing *Rent-A-Center*, 561 U.S. at 72). The court then applied this law to the relevant facts when it reasoned that, because Fedor did not specifically challenge the delegation clause within the 2016 policy, the court "[wa]s constrained to treat the delegation provision as valid and

9

which—according to the Supreme Court in both *Rent-A-Center* and *Granite Rock*—cannot be delegated to an arbitrator.

It is of no matter that Fedor failed to specifically challenge the delegation clause within the 2016 arbitration contract below. It is true that the *Rent-A-Center* Court required the respondent to arbitrate his claims because he failed to specifically challenge the delegation clause within the relevant arbitration agreement. 561 U.S. at 72. However, the respondent there indisputably entered into the arbitration agreement at issue, and thus initially agreed to the delegation clause within the policy. *Id*. at 65.

Fedor's issue is quite different from the one in *Rent-A-Center*. She claims that she never saw or agreed to any aspect of the 2016 arbitration policy. This is an issue of formation that inherently calls into question whether she agreed to the delegation clause within the policy. Denying her relief because of her failure to specifically challenge the delegation clause would thus contradict the Supreme Court's repeated statement that courts may order arbitration only when "satisfied that the parties agreed to arbitrate." *Granite Rock*, 561 U.S. at 297.

### III.

We reject UHC's arguments to affirm on the alternate grounds that the prior arbitration agreements were valid and that the plaintiffs implicitly agreed to arbitrate

---

enforce it." *Id*. And because the court applied the "relevant law to the relevant facts," it adequately "passe[d] upon" the delegation clause issue and preserved it for appeal. *Tesone*, 942 F.3d at 992.

any claims against UHC by commencing employment with the company. Because affirmance on these grounds would enlarge UHC's rights, UHC can raise them only through cross-appeal. UHC did not do so, and we therefore decline review.

While an appellee can generally seek affirmance on any ground found in the record, it must file a cross-appeal if it seeks to enlarge its rights and gain "more than it obtained by the lower-court judgment." *United States v. Madrid*, 633 F.3d 1222, 1225 (10th Cir. 2011). A cross-appeal is thus required where resolution of an issue could preclude future plaintiffs from bringing certain claims against the appellee. *Housing Authority of Kaw Tribe of Indians of Oklahoma v. City of Ponca City*, 952 F.2d 1183, 1195 (10th Cir. 1991).

For example, in *Kaw Tribe*, this court found that appellee Ponca City was required to file a cross-appeal to raise its res judicata arguments—which were denied by the district court below—because affirmance on res judicata grounds would preclude "other potential plaintiffs . . . from bringing claims against Ponca City." *Id*. There, we reviewed the lower court's dismissal of Kaw Tribe Housing Authority's federal claims against the City. *Id*. at 1186. In the lower court, the City moved to dismiss on the grounds that the Authority did not possess standing as a political subdivision, and also that res judicata barred the Authority's claims which "could have been asserted in response to the [C]ity's action in state court" during a previous suit. *Id*. The district court granted the City's motion on the ground that the Authority lacked political subdivision standing, but "expressly stated that res judicata was *not* a basis for its decision." *Id*. at 1186–87 (emphasis added). Nonetheless, the City refreshed its res judicata argument when

11

defending against the Authority's appeal, arguing for affirmance on that ground. *Id.* at 1195.

However, we rejected Ponca City's res judicata argument because the City did not file a cross-appeal. *Id.* The City contended that a cross-appeal was not required to argue res judicata because the argument was raised below and a finding in the City's favor on such ground would merely sustain the district court's judgment. *Id.* But we disagreed, finding that an affirmance based on the City's res judicata argument would "enlarge the rights conferred by the original judgment" by precluding future plaintiffs from bringing claims against the City. *Id.*

Similarly, here, affirming the district court's order based on the 2006, 2012, and 2015 arbitration agreements would enlarge UHC's rights by precluding future plaintiffs from bringing FLSA claims against UHC in federal court. The district court found that the 2006, 2012, and 2015 arbitration agreements were illusory. Therefore, under the district court's order, employees who left UHC prior to 2016 can currently bring employment-related claims against UHC in federal court without having to adjudicate such claims through arbitration.[3] However, if we were to disagree with the district court and find that the prior agreements were valid, then UHC could use its past agreements to compel employees (who left the company before 2016) to arbitrate employment-related claims rather than litigate them in court. Accordingly, as we found in *Kaw Tribe*, affirming the district court's order on the ground that the prior agreements were valid

---

[3] We decline to review, and thus take no position on, the district court's finding that the 2006, 2012, and 2015 arbitration agreements were illusory.

12

would "enlarge [UHC's] rights conferred by the original judgment." *Id*. at 1195. And because UHC did not file the required cross-appeal, we decline to review the district court's finding that the prior agreements were illusory.[4]

IV.

For the foregoing reasons, we VACATE the district court's judgment compelling arbitration and REMAND for the district court to determine if Fedor and UHC formed the 2016 arbitration agreement.

---

[4] The same holds true for UHC's other argument, which is that the class members implicitly promised to arbitrate any employment-related claims that arose between them and UHC by beginning employment with UHC after reading the company's arbitration policy in their offer letters. If we were to affirm the district court's order on this ground, we would enable UHC to compel arbitration against other employees who also "implicitly" agreed to arbitrate claims against the company. Resolving this argument thus has the potential to preclude other employees from litigating their employment-related claims in federal court and would accordingly require a cross-appeal. *See Kaw Tribe*, 952 F.2d at 1195.